# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| EVELYN D. WHITAKER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-17-372-SPS |
| | ) |
| COMMISSIONER of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Evelyn D. Whitaker requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision is AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was forty-six years old at the time of the administrative hearing (Tr. 45, 152). She has a high school education and has worked as a box maker and poultry boner (Tr. 62-63, 191). The claimant alleges that she has been unable to work since an amended onset date of December 1, 2014, due to back problems, leg pain, chest pain, high blood pressure, tension headaches, and anemia (Tr. 52, 190).

## Procedural History

On November 20, 2014, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434 (Tr. 152-58). Her application was denied. ALJ Charles Walters conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated July 22, 2016 (Tr. 12-27). The Appeals Council denied review, so the ALJ's written opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found the claimant retained the residual functional capacity ("RFC") to perform a limited range of sedentary work as defined in 20 C.F.R. § 404.1567(a), *i. e.*, she could lift, carry, push, or pull less than ten pounds frequently and up to ten pounds occasionally; sit for six hours in an eight-hour day; and stand/walk for two hours in an eight-hour day (Tr. 19). The ALJ also limited the claimant to simple work-related decisions, and simple, routine, repetitive

tasks not at a production rate pace (Tr. 19). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was other work she could perform in the national economy, *e. g.*, addresser, telephone question clerk, and assembler (Tr. 24-26).

## Review

The claimant contends that the ALJ erred when assessing the RFC by failing to: (i) consider her severe obesity, (ii) consider the combined effects of her nonsevere impairments, and (iii) provide limitations for her moderate difficulties in social functioning. The Court finds these contentions unpersuasive for the following reasons.

The ALJ found that the claimant had the severe impairments of degenerative disc disease of the lumbar spine, ischemic heart disease, angina, depression, anxiety, and obesity (Tr. 16). The relevant medical evidence reveals that Dr. Jon Maxwell treated the claimant for depression on December 20, 2012 (Tr. 353-54). Additionally, Dr. Maxwell treated the claimant for back pain from February 2013 through March 2014 (Tr. 338-52). Dr. Maxwell consistently found tenderness in the claimant's lumbar region and noted that she had difficulty standing from a sitting position on two occasions (Tr. 338-52). A lumbar spine MRI conducted on March 8, 2013, revealed a 2-3mm disc bulge, disc desiccation, mild bilateral neural foraminal narrowing, and early facet arthritis at L4/5, and mild degenerative facet hypertrophic arthritic changes at L5/S1 causing mild bilateral neural foraminal narrowing (Tr. 358). On March 11, 2014, the claimant presented to a provider at Regional Neurosurgical Associates who noted her MRI was unremarkable, diagnosed her with lumbar disc degeneration, and referred her to a pain clinic (Tr. 374-75).

The claimant established care with Dr. Manuel Cruz, a cardiologist, on March 31, 2014, and reported chest pain, palpitations, and lightheadedness (Tr. 317-20). An echocardiogram conducted on April 21, 2014, revealed an ejection fraction of sixty-five to seventy percent with mild mitral and tricuspid regurgitation (Tr. 299, 316). A stress test conducted on May 2, 2014, revealed mild to moderate anterior ischemia and paradoxical inferior changes (Tr. 299-300). At a follow-up appointment on May 5, 2014, Dr. Cruz diagnosed the claimant with angina pectoris, hypertension, obesity, lightheadedness (resolved), palpitations (better), and mitral valve regurgitation (Tr. 298-99). The claimant underwent a cardiac catherization on May 14, 2014, that revealed a small distal right coronary artery system, luminal irregularities in the left anterior descending, and a normal ejection fraction, and medical management was recommended (Tr. 332). At a follow-up appointment on August 22, 2014, the claimant reported continued symptoms with physical activity, noting that she was under a lot of stress, and Dr. Cruz recommended a workup for noncardiac causes of her chest discomfort (Tr. 290-93). Dr. Cruz also consistently encouraged the claimant to modify her lifestyle as it related to her obesity (Tr. 293, 299, 319).

On April 14, 2015, state agency psychologist Laura Eckert, Ph.D., completed a Psychiatric Review Technique form and concluded that the claimant's mental impairments were nonsevere, but found that she was mildly impaired in the functional categories of activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace (Tr. 68-69). These findings were affirmed on review (Tr. 79-81).

On April 22, 2015, state agency physician Dr. David McCarty reviewed the record and completed a physical RFC assessment (Tr. 70-72). He indicated that the claimant could perform light work with the postural limitations of occasional climbing ladders/ropes/scaffolds/ramps/stairs, stooping, and kneeling, and referenced the claimant's degenerative disc disease/spondylosis of lumbar spine with sciatica as support (Tr. 70-72). These findings were also affirmed on review (Tr. 81-84).

At the administrative hearing, the claimant testified that she was unable to work due to back pain that radiates down her left leg and makes it difficult for her to walk (Tr. 54, 56). As to her heart disease, the claimant stated that she sometimes experiences a rapid heartbeat and chest pain which cause difficulty breathing (Tr. 55). The claimant indicated that she took over the counter medication for her back pain in the past, but did not do so currently, and just "deals" with the pain (Tr. 57). As to specific limitations, the claimant testified that she could take twenty steps before needing to stop or slow down due to leg pain and could stand for five or ten minutes before needing to sit (Tr. 57-58).

In his written opinion, the ALJ summarized the medical evidence, including the claimant's hearing testimony. At step three, he found the claimant had mild restriction in her activities of daily living, and moderate difficulties in social functioning and concentration, persistence, or pace (Tr. 17-18). In discussing the claimant's obesity at step four, he noted some limited physical examination abnormalities such as general fatigue and a positive straight leg raise test on the left, but further noted that such examinations were otherwise normal as to motor strength, sensation, and walking capacity (Tr. 22). He indicated the sedentary RFC accounted for the claimant's back pain, leg pain, and difficulty

with walking and standing (Tr. 22). As to the claimant's mental impairments at step four, the ALJ noted there was no evidence of treatment for depression or anxiety since 2012, and that the claimant denied feeling down, depressed, or hopeless in February 2016 (Tr. 23). He indicated that the RFC generously accounted for "some impairment in concentration and attention, as well as social functioning, despite limited medical treatment or complaints for mental health conditions." (Tr. 23). The ALJ then gave little weight to the state agency physicians' opinion that the claimant could perform a limited range of light work in light of the 2013 lumbar spine MRI and the claimant's subjective complaints of chest pain and back pain (Tr. 23). The ALJ also gave little weight to the state agency psychologists' opinion that the claimant's mental impairments were nonsevere in light of the medical evidence of record and the claimant's testimony (Tr. 23-24).

The claimant contends that the ALJ erred at step four by failing to properly consider her severe impairment of obesity. Social Security Ruling 02-1p states that the effects of obesity must be considered throughout the sequential evaluation process. *See* 2002 WL 34686281, at *1 (Sept. 12, 2002). The Listing of Impairments with regard to the cardiovascular system references obesity and explains that "[t]he combined effects of obesity with cardiovascular impairments can be greater than the effects of each of the impairments considered separately." The ALJ "must consider any additional and cumulative effects of obesity" when assessing an individual's RFC. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A, 4.00 Cardiovascular System - Adult. However, "[o]besity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment." Therefore, "[a]ssumptions about the severity or

functional effects of obesity combined with other impairments [will not be made]," and "[w]e will evaluate each case based on the information in the case record." Soc. Sec. Rul. 02-1p, 2002 WL 34686281, at *6. Here, the record reflects that the claimant's weight ranged from 194-214 pounds and she is five feet, six inches tall (Tr. 290-300, 336-55, 377-82). The claimant argues that ALJ failed to properly account for her obesity, but the ALJ *did* specifically discuss her obesity when making his RFC determination as noted above (Tr. 22). Furthermore, the claimant does not point to any evidence in the medical record indicating "functional limitations from [her] obesity or of any impairments possibly caused or exacerbated by her obesity that are inconsistent with the RFC[,] . . ." *Jimison ex rel. Sims v. Colvin,* 513 Fed. Appx. 789, 798 (10th Cir. 2013), and the ALJ is not required to speculate as to the impact of her obesity. *See Fagan v. Astrue*, 231 Fed. Appx. 835, 837-838 (10th Cir. 2007) ("The ALJ discussed the evidence and why he found Ms. Fagan not disabled at step three, and, the claimant—upon whom the burden rests at step three—has failed to do more than suggest that the ALJ should have speculated about the impact her obesity may have on her other impairments."). The Court therefore finds no error in the ALJ's consideration of the claimant's obesity.

The claimant next contends that the ALJ erred at step four by failing to consider her nonsevere headaches, anemia, hypertension, and deep vein thrombosis. The Court agrees that the ALJ is required to consider all of a claimant's impairments—both severe and non-severe—singly and in combination, when formulating a claimant's RFC. *See, e. g., Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("'At step two, the ALJ must 'consider the combined effect of all of [the claimant's] impairments without regard to

whether any such impairment, if considered separately, would be of sufficient severity [to survive step two].' "), *quoting Langley v. Barnhart*, 373 F.3d 1116, 1123–24 (10th Cir. 2004), *quoting* 20 C.F.R. § 404.1523. *See also Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.' ") [emphasis in original] [citations omitted]. However, the ALJ *did* address the claimant's nonsevere impairments when he found them to be well controlled by medication and/or vitamin supplements and noted there was no evidence or indication for further diagnostic studies or evaluation of her headaches (Tr. 16). Furthermore, the claimant does not point to any evidence in the record showing that her nonsevere impairments, either individually or in combination with her other impairments, resulted in any functional limitations. *See Welch v. Colvin*, 566 Fed. Appx. 691, 695 (10th Cir. 2014) (finding harmless any error the ALJ made by not considering the combined effects of all of the claimant's impairments since there was no evidence that such impairments restricted the claimant's ability to work).

Lastly, the claimant argues that the ALJ failed to properly account for the moderate difficulties in social functioning he determined she had at step three (Tr. 17-18). However, as the ALJ explained, "[t]he limitations identified in the 'paragraph B' criteria are not an [RFC] assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process." (Tr. 19). *See* Social Security Ruling 96-8p, 1996 WL 374184 at *4. *See also Beasley v. Colvin,* 520 Fed. Appx. 748, 754 (10th Cir. 2013) ("The ALJ was under no obligation to include limitations in social functioning in [the

claimant's] RFC based solely on his finding that she had 'moderate difficulties' in social functioning as part of the distinct step-three analysis."). Indeed, "[t]he mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listings of Impairments, and summarized on the [Psychiatric Review Technique Form]." Social Security Ruling 96-8p, 1996 WL 374184 at *4. In this case, the ALJ properly performed the more detailed evaluation of the record evidence at step four (Tr. 19-24). The ALJ's written opinion indicates that he considered the entire record, determined an appropriate RFC, and concluded that the claimant was not disabled because there was work that she could perform. *See Hill v. Astrue*, 289 Fed. Appx. at 293 ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.' "), *quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004). All of this was "well within the province of the ALJ." *See Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ."), *citing* 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946.

**Conclusion**

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 7th day of March, 2019.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**